IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:21-CV-45-D

| | |
|---|---|
| KENNETH FRIERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     **ORDER** |
| | ) |
| THE SHAW UNIVERSITY, | ) |
| | ) |
| Defendant. | ) |

On February 1, 2021, Kenneth Frierson ("Frierson" or "plaintiff") filed a complaint against The Shaw University ("Shaw" or "defendant") alleging wrongful employment termination under Title IX of the Education Amendment Act of 1972, 20 U.S.C. § 1681(a) ("Title IX") [D.E. 1]. On July 20, 2021, Frierson filed an amended complaint [D.E. 11]. On August 29, 2022, Shaw moved for summary judgment [D.E. 26] and filed a memorandum in support [D.E. 27], exhibits [D.E. 28], and a statement of material facts [D.E. 29]. On August 30, 2022, Shaw filed an amended motion for summary judgment [D.E. 32]. On September 21, 2022, Frierson responded [D.E. 36] and filed an opposing statement of material facts [D.E. 37]. On October 5, 2022 Shaw replied [D.E. 42]. The same day, Shaw responded to Frierson's opposing statement of material facts [D.E. 43]. As explained below, the court grants Shaw's motion for summary judgment.

I.

This action stems from an internal Title IX investigation at Shaw into a student's allegation of sexual harassment against Frierson. See Am. Compl. [D.E. 11] ¶¶ 4–14; see also Def. SMF [D.E. 29] ¶¶ 3–4, 17–19, 23–39; Pl. SMF [D.E. 37] ¶¶ 1, 5. Shaw is a private university that receives

federal funding. See Def. SMF ¶ 4; Pl. SMF ¶ 1. Frierson was the Director of Student Retention at Shaw University, an at-will employment position. See Def. SMF ¶¶ 17–19; Pl. SMF ¶ 1. Frierson worked in an office with other employees, as well as student interns. See Def. SMF ¶ 20; Pl. SMF ¶ 1. When Shaw hired Frierson in August 2017, Frierson signed an acknowledgment that he reviewed and understood the Employee Handbook and that he acknowledged and agreed to abide by Shaw's policies prohibiting harassment. See Def. SMF ¶ 21; Pl. SMF ¶ 1. Shaw's harassment policies and employee guides included a student relationship policy and an inappropriate conduct/behavior policy. See Def. SMF ¶¶ 5–16; Pl. SMF ¶ 1.

In August 2017, Frierson (then age 29 and unmarried) began working at Shaw as Director of Student Retention. See Frierson Dep. [D.E. 38-1] 13, 50. A female student intern worked in the same office suite as Frierson. Id. at 50–51. The female student was not enrolled in any of the classes that Frierson taught. See id. at 51–52. She did not report to Frierson as an intern but sometimes worked on issues concerning student retention. See id. at 56–58. Frierson communicated with the student in person, via email, on the telephone, and via text. See id. at 59. In mid-December 2017, when the student intern left for winter break, Frierson texted the student intern to see if she had left for Los Angeles yet and later texted her to see if she arrived safely. See id. at 75–76. She did not respond. See id. On January 15, 2018, at 10:50 p.m., Frierson texted the student intern and asked, "Are you responding to me now? Okay." Id. at 76. She did not respond. At 11:28 p.m., Frierson texted the student intern and wrote, "No? Cool." Id. At 11:30 p.m., the student responded via text, "LMAOOO." Id. at 77. To which Frierson asked if something was funny, and then he wrote, "See how you play." Id. The student intern then wrote, "Sir, what do you want." Id. Frierson responded, "Call me." According to Frierson, he wanted to speak with the student intern about an event with students for MLK Day. Id.

2

On January 31, 2018, Frierson learned from Lee Wood ("Wood"), Shaw's Title IX coordinator, that a student intern who worked in the same office as Frierson had filed a sexual harassment complaint against him. See Def. SMF ¶¶ 24–25, 27, 34; Pl. SMF ¶¶ 3–5, 9; Am. Compl. ¶ 10; cf. [D.E. 38-2] 88–95 (emails concerning the complaint of a female student to Shaw administrator Rishard Wedderburn about Frierson's behavior on January 29, 2018, where Frierson called the student to his office at approximately 5:15 p.m. to express his feelings for the student). Wood identified the student, asked questions about Frierson and the student's relationship, notified Frierson that Shaw (through Wood) would investigate the alleged sexual harassment, and told Frierson to remain off campus during the investigation. See Def. SMF ¶¶ 34; Pl. SMF ¶ 9; Am. Compl. ¶¶ 10–11.

Shaw's investigation into the student's sexual harassment complaint against Frierson consisted of the student completing an intake form, the student meeting with Wood to review her complaint and to be interviewed, Wood interviewing the student's roommate, and Wood interviewing Frierson. See Def. SMF ¶¶ 28–35; Pl. SMF ¶¶ 5–9. During Frierson's interview, Wood did not tell Frierson the student's specific allegations beyond stating that a female student stated that Frierson was "bothering her." See Def. SMF ¶ 34; Pl. SMF ¶ 9; Am. Compl. ¶ 10; Frierson Decl. [D.E. 41] ¶ 5. Frierson denied having any physical contact with the student, but did admit speaking with her in person, on the phone, and via text messages. See [D.E. 36] 4.

As part of the investigation, Wood collected evidence, including text messages that Frierson sent to the student and to the student's roommate. See [D.E. 28-4]. The student alleged that Frierson harassed her on multiple occasions, indicated that he wanted to have a relationship with her, and that Frierson used sexual innuendo. See Def. SMF ¶¶ 25, 30, 32; see also [D.E. 28-4]. The student also alleged that Frierson called her between 8:00 p.m. and 9:00 p.m. just to talk, texted her after work

3

hours, and once touched her without her consent in his office. See [D.E. 28-4] 3, 14. The text messages included some sent on a Sunday evening telling the student to "stop playing with me" and to "tell [her roommate] to come to class." Id. at 14. The student's allegations were supported by her call logs, screen shots of her text messages, and an interview of her roommate, a friend whom the student repeatedly told about Frierson's alleged harassment. See id. at 2–18. The student was not one of Frierson's students, did not report to Frierson, was a senior, was doing well academically, and was not at risk for leaving Shaw early. See Def. SMF ¶¶ 23–24; Pl. SMF ¶ 3. Frierson had no professional need to contact the student because she was not his student and she did not report to him. See Def. SMF ¶¶ 23–24; Pl. SMF ¶ 3.

On February 1, 2018, Wood completed the Title IX investigation and prepared a detailed report. See [D.E. 28-4] 1–18. Wood forwarded the report to Dr. Pamela Denning (Shaw's Associate Vice President of Academic Affairs) and Dr. Renata Dusenbury (Shaw's Vice President of Academic Affairs). See Def. SMF ¶¶ 17, 35; [D.E. 34-1] 2. On that same day, Dr. Dusenbury forwarded the report to Shaw's President, Dr. Paulette R. Dillard, for her review and decision. See Def. SMF ¶ 36. Dr. Dusenbury and Dr. Denning recommended terminating Frierson's employment. See id. Dr. Dillard received the recommendation, authorized terminating Frierson's employment, and authorized giving Frierson the option to resign in lieu of termination. Id.

On February 1, 2018, around 5:00 p.m., Wood notified Frierson that Shaw had completed its investigation into the student's allegations. See Def. SMF ¶¶ 35–36; Pl. SMF ¶ 10. On February 2, 2018, Frierson met with Wood and Dr. Denning, Frierson's supervisor. See Def. SMF ¶ 37; Pl. SMF ¶ 10. Wood and Dr. Denning notified Frierson that the investigation concluded with a recommendation that Shaw terminate Frierson's employment. See Def. SMF ¶¶ 37–39; Pl. SMF ¶ 10. Wood and Dr. Denning presented Frierson with a resignation letter, which he refused to sign.

4

See Def. SMF ¶¶ 37–39; Pl. SMF ¶ 10. Therefore, Shaw terminated Frierson's employment. See Def. SMF ¶¶ 37–39; Pl. SMF ¶ 10.

On July 31, 2018, Frierson filed a complaint under Title IX with the Office for Civil Rights ("OCR") in the United States Department of Education. See Def. SMF ¶ 40; Pl. SMF ¶ 11. On July 30, 2019, the OCR investigation found that Shaw failed to comply with Title IX by failing to provide Frierson with specific notice of the allegations against him, failing to give Frierson a reasonable opportunity to respond to the allegations, and failing to give Frierson an opportunity to confront or question the student or respond to the student's specific allegations against him. See Def. SMF ¶ 41; Pl. SMF ¶ 11.

On July 25, 2019, in response to the OCR investigation, Shaw entered into an OCR Resolution Agreement and agreed to appoint an impartial investigator to reinvestigate the student's allegations. See Def. SMF ¶ 42; Pl. SMF ¶ 11. On October 12, 2019, as part of the reinvestigation, Shaw emailed Frierson and asked him for an interview. See [D.E. 34-1] 23. On October 16, 2019, Frierson declined to be interviewed, and he did not otherwise provide any additional information during the investigation. Id. On October 18 and 19, 2019, Shaw again contacted Frierson about its interview request, but Frierson did not respond. Id. at 23 n.1.

On January 17, 2020, the OCR issued its Monitoring Closure Letter to Shaw. See Def. SMF ¶ 43; Pl. SMF ¶ 11. In the letter, the OCR noted that Shaw agreed to comply with the Resolution Agreement by appointing an impartial investigator to reinvestigate the student's allegations. See [D.E. 34-1] 22–24; Def. SMF ¶ 43; Pl. SMF ¶ 11. The OCR letter also noted Frierson's failure to participate in the reinvestigation. See [D.E. 34-1] 23; see also Def. SMF ¶ 43; Pl. SMF ¶ 11. The reinvestigation did not alter the conclusions of the first investigation, and the OCR found that Shaw fulfilled its requirements under the OCR Resolution Agreement. See [D.E. 34-1] 23.

II.

Summary judgment is appropriate when, after reviewing the record as a whole, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Scott v. Harris, 550 U.S. 372, 378, 380 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment initially must demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, see Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (cleaned up). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. See Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Harris, 550 U.S. at 378.

A genuine issue of material fact exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. See Anderson, 477 U.S. at 249. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position [is] insufficient . . . ." Id. at 252; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Only factual disputes that affect the outcome under substantive law properly preclude summary judgment. See Anderson, 477 U.S. at 248.

Title IX prohibits discrimination "on the basis of sex" by institutions, including colleges or universities, receiving federal financial assistance. See 20 U.S.C. §§ 1681(a), 1687; Jackson v.

6

Birmingham Bd. of Educ., 544 U.S. 167, 173 (2005); Cannon v. Univ. of Chi., 441 U.S. 677, 695 n.17 (1979); Peltier v. Charter Day Sch., Inc., 37 F.4th 104, 127 (4th Cir. 2022) (en banc). Title IX "is enforceable through an implied private right of action." Sheppard v. Visitors of Va. State Univ., 993 F.3d 230, 235 (4th Cir. 2021); Cannon, 441 U.S. at 703.

To state a claim under Title IX, a plaintiff must plausibly allege that a federally-funded institution discriminated against him on the basis of sex. See Sheppard, 993 F.3d at 235; Doe v. Purdue Univ., 928 F.3d 652, 667–68 (7th Cir. 2019). As part of a plaintiff's claim, a plaintiff must plausibly allege that plaintiff's sex was the "but-for" cause of the discrimination. See Sheppard, 993 F.3d at 236 (collecting cases). In attempting to raise a plausible inference that a college discriminated on the basis of sex, a plaintiff may pursue an "erroneous outcome" theory or a "selective enforcement" theory. See Shepard, 993 F.3d at 235–36; Yusuf v. Vassar Coll., 35 F.3d 709, 715 (2d Cir. 1994). Under the erroneous outcome theory, a plaintiff must allege and prove that he "was innocent and wrongly found to have committed an offense" and that there is a causal connection between the flawed outcome and sex bias. Yusuf, 35 F.3d at 725. Under the selective enforcement theory, a plaintiff must allege and prove "that, regardless of the [plaintiff's] guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the [plaintiff's sex]." Id.

Evidence of "clear procedural irregularities" can support a plausible inference that a college discriminated on the basis of sex in violation of Title IX. See, e.g., Doe v. Oberlin Coll., 963 F.3d 580, 586–88 (6th Cir. 2020). But merely identifying mistakes or imperfections in an investigation does not suffice to raise a plausible inference of sex discrimination. See, e.g., Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 291–92 (1998); Doe v. Samford Univ., 29 F.4th 675, 688 (11th Cir. 2022). Moreover, evidence that a university credits an alleged victim's statements and supporting

7

evidence during a Title IX investigation does not constitute sex-based bias or sex discrimination. See, e.g., Rossley v. Drake Univ., 342 F. Supp. 3d 904, 927 (S.D. Iowa 2018), aff'd, 979 F.3d 1184 (8th Cir. 2020); Doe v. Univ. of Colo., Boulder, 255 F. Supp. 3d 1064, 1079 (D. Colo. 2017); Doe v. Univ. of St. Thomas, 240 F. Supp. 3d 984, 990–92 (D. Minn. 2017); Sahm v. Miami Univ., 110 F. Supp. 3d 774, 778–80 (S.D. Ohio 2015); Haley v. Va. Commonwealth Univ., 948 F. Supp. 573, 579 (E.D. Va. 1996). Furthermore, a reviewing court in an action alleging a Title IX violation does not "step into the shoes of the university's decision-makers and evaluate the weight and credibility of the evidence" that a university "found demonstrated [a person] was responsible for misconduct." Rossley, 342 F. Supp. 3d at 927; see Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 648–49 (1999); Univ. of St. Thomas, 240 F. Supp. 3d at 989–90; Yu v. Vassar Coll., 97 F. Supp. 3d 448, 461 (S.D.N.Y. 2015); Doe v. Univ. of the S., 687 F. Supp. 2d 744, 755 (E.D. Tenn. 2009).

In his amended complaint, Frierson contends that after the student alleged that he sexually harassed her, Shaw conducted a flawed investigation into the student's allegations, treated him differently during the investigation because of his sex, and terminated his employment based on his sex. See Am. Compl. ¶¶ 21–26. Shaw responds that it impartially investigated the student's claims and agreed to reinvestigate the claims with an impartial investigator in accordance with the OCR Resolution Agreement. Frierson, however, declined to provide any additional information to the person appointed to do the reinvestigation, and Shaw permissibly maintained its decision to terminate Frierson's employment. See [D.E. 27] 2–5.

Although the parties dispute whether Frierson provided information, such as text messages and supporting witnesses, during Shaw's initial investigation, Frierson does not object to paragraph

43 in Shaw's statement of material facts. See [D.E. 37] ¶¶ 1–11. Paragraph 43 of Shaw's statement of material facts states:

> On January 17, 2020, OCR issued its Monitoring Closure Letter to Shaw. In that letter, OCR noted that Shaw, pursuant to the Resolution Agreement, agreed to reopen and complete a prompt and equitable investigation of the complaint filed by the Student against Frierson, including a designating an impartial investigator to re-interview Frierson and review any additional information provided by him. OCR further noted that, in response to Shaw's requests for an interview, Frierson stated he did not want to participate in an interview by Shaw and he did not otherwise provide any additional information to be considered in the investigation.

Def. SMF ¶¶ 43; Pl. SMF ¶ 11. Therefore, although Frierson disputes whether Shaw initially asked Frierson for witnesses or to provide other information to support his position during the initial investigation, Frierson does not dispute four key facts about the reinvestigation. First, Shaw appointed an impartial investigator to reinvestigate the student's sexual harassment complaint against him. Second, as a part of the reinvestigation, the impartial investigator asked Frierson for an interview and additional information to support Frierson's position during the reinvestigation. See Def. SMF ¶ 43; Pl. SMF ¶ 11. Third, Frierson declined to provide any information to the impartial investigator during the reinvestigation. See Def. SMF ¶ 43; Pl. SMF ¶ 11. Accordingly, Shaw did not change its decision to terminate Frierson's employment.

Even if there is a genuine dispute concerning whether Shaw originally asked Frierson for witnesses and whether Shaw conducted the initial investigation properly, Frierson has failed to create a genuine issue of material fact concerning whether Frierson's sex was the but-for cause of his employment termination or Shaw's decision not to change that employment decision after appointing an impartial person to reinvestigate the student's sexual harassment complaint. See Def. SMF ¶¶ 40–41; Pl. SMF ¶ 11; see also Am. Compl. ¶ 33; [D.E. 36] 6. As for Frierson's argument about systemic procedural errors, the OCR did find that Shaw failed to comply with Title IX during its

9

initial investigation. See Def. SMF ¶¶ 40–41; Pl. SMF ¶ 11. Nonetheless, the imperfections in Shaw's initial investigation do not suffice to raise a genuine issue of material fact about sex discrimination concerning the original decision to terminate Frierson's employment or the decision to decline to change it after the reinvestigation. See Gebser, 524 U.S. at 291–92 (holding that a school's failure to follow a Title IX regulation "d[id] not itself constitute 'discrimination' under Title IX"). Tellingly, Shaw appointed an impartial investigator to reinvestigate the student's complaint, but Frierson chose not to participate in that reinvestigation. See Def. SMF ¶ 43; Pl. SMF ¶ 11.

In opposition to the conclusion that Shaw did not violate Title IX in terminating Frierson's employment, Frierson cites two cases for the proposition that procedural irregularities can provide a plausible inference of sex discrimination. See Doe v. Univ. of Ark.-Fayetteville, 974 F.3d 858 (8th Cir. 2020); Doe v. Purdue Univ., 928 F.3d 652 (7th Cir. 2019). In University of Arkansas-Fayetteville, the United States Court of Appeals for the Eighth Circuit held that a male student plaintiff plausibly alleged that the university panel that reversed a Title IX coordinator's finding that the male student did not sexually assault a female student was under outside pressure to change the result due to media scrutiny, a student body movement, and an Arkansas legislative investigation into how the university allegedly mishandled several sexual assault allegations. See Univ. of Ark.-Fayetteville, 974 F.3d at 860–66. Moreover, the Eighth Circuit held that the male student plaintiff plausibly alleged that even though the university panel found the male student responsible for sexual assault, the university panel did not expel him, which was the typical sanction for such a finding. Thus, this failure to expel the male student plausibly indicated that the university panel found the male student guilty of violating university policy to appease those providing outside pressure but deviated from the typical sanction because the evidence did not support the finding of a sexual assault. See id. at 865–66. Accordingly, the Eighth Circuit reversed the district court's decision to

10

dismiss the male student plaintiff's Title IX claim under Federal Rule of Civil Procedure 12(b)(6). See id. at 869.

As for Purdue University, close to the time that Purdue disciplined a male student for allegedly sexually assaulting a female student with whom he was in a consensual sexual relationship, a Purdue official involved in the investigation of the male student posted an article to Facebook titled "Alcohol isn't the cause of campus sexual assault. Men are." Purdue Univ., 928 F.3d at 669–70. Moreover, two members of the Purdue panel investigating the male student also "candidly stated that they had not read the investigative report. The one who apparently had read it asked [the male student] accusatory questions that assumed his guilt." Id. at 658. On this record, the Seventh Circuit reversed the district court's decision to dismiss the male student plaintiff's Title IX claim under Rule 12(b)(6). See id. at 667–70.

In contrast to these two cases, this court is reviewing this matter at summary judgment. Moreover, Frierson has presented no evidence of systemic procedural bias. During the initial investigation and reinvestigation, Shaw relied on credible allegations of the student supported by text messages, call logs, and another witness. See Def. SMF ¶¶ 25, 30, 32; see also [D.E. 28-4]. Furthermore, Frierson has not presented evidence that Shaw favors females over males when conducting Title IX investigations or that Shaw faced any outside pressure in making its decisions in this case. The only argument Frierson makes for sex-based bias against him in the initial investigation was the decision of Shaw administrators to credit the female student's version of events over Frierson's version. See [D.E. 36] 6. However, crediting a victim's statements, backed by additional evidence such as text messages and a corroborating witness, does not evince discrimination on the basis of sex. See, e.g., Rossley, 342 F. Supp. 3d at 928; Univ. of Colo.,

11

Boulder, 255 F. Supp. 3d at 1079; Univ. of St. Thomas, 240 F. Supp. 3d at 991; Sahm, 110 F. Supp. 3d at 778; Haley, 948 F. Supp. at 579.

As for specific individual sex bias, Frierson alleges that Wood, the male Title IX coordinator who originally investigated the allegations, was biased against men. See Am. Compl. ¶¶ 34–35; [D.E. 36] 4–5, 9–10. In support, Frierson cites an interaction where Wood did not make Frierson pay for parking at a Shaw athletic event after noticing that Frierson was with his girlfriend. See [D.E. 36] 10. Frierson also cites a comment that Wood made during the February 2, 2018 meeting stating that Frierson's caring nature was seen as predatory. See id. at 5, 10. Frierson also cites as evidence of specific individual sex bias that Frierson was the only male in an office with eight women, but his supervisor once did not allow him to hire a more qualified male applicant. See id. at 10.

Even viewing the cited evidence in the light most favorable to Frierson, no rational jury could rely on the cited evidence to plausibly infer that Shaw (through Wood, Dr. Denning, Dr. Dusenbury, and Dr. Dillard) conducted the initial investigation, terminated Frierson's employment, conducted the reinvestigation, or persisted in the original termination decision because of Frierson's sex. The cited evidence simply does not support Frierson's claim that discrimination on the basis of Frierson's sex was the but-for cause of how Shaw conducted the initial investigation or reinvestigation or why Shaw terminated Frierson's employment and declined to change that decision.

As for Frierson's erroneous outcome argument, Frierson does not present evidence that permits a plausible inference that he was innocent and wrongly found to have acted inconsistently with Shaw's employment policies and that there is a causal connection between the alleged erroneous outcome and Frierson's sex. Even viewing the record in the light most favorable to Frierson, no evidence suggests that Shaw wrongfully terminated Frierson's employment. Although

12

Frierson states that his relationship with the student was not overtly sexual, that he never touched the student, and that he had no romantic or physical relationship with the student, a physical, romantic, or sexual relationship was not necessary under Shaw's employment policies for Shaw to terminate Frierson's employment. The undisputed evidence showed that Frierson gave the student intern his phone number so that she could text him about personal and professional topics, called her periodically in the evening to see how she was doing, and repeatedly texted her during her winter break. See Def. SMF ¶¶ 25, 30, 32; see also [D.E. 28-4]. Frierson's conduct raised concerns with Shaw's administration, including potential Federal Education Rights and Privacy Act ("FERPA") violations, the power differential between Frierson and the student intern, and Frierson's extremely poor judgment in communicating with the student as he did. See [D.E. 28-3] 10–14; [D.E. 28-4] 8; [D.E. 29-5] ¶¶ 5–6; [D.E. 29-8] ¶¶ 7, 10–11. Furthermore, Frierson was an at-will employee. See Def. SMF ¶¶ 17–19; Pl. SMF ¶ 1. Therefore, the evidence presented shows that Shaw had reasons that were not based on Frierson's sex to terminate his employment. Even viewing the record in the light most favorable to Frierson, Frierson has not presented sufficient evidence of sex discrimination. See, e.g., Shepard, 993 F.3d at 236.

III.

In sum, the court GRANTS defendant's motion for summary judgment [D.E. 32]. Defendant may file a motion for costs in accordance with the Federal Rules of Civil Procedure and the court's local rules. The clerk shall close the case.

SO ORDERED. This 19 day of May, 2023.

J. Dever

JAMES C. DEVER III
United States District Judge